UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHAHDAN SALLAJ,<br>    Petitioner,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); DANIEL W. MARTIN, *Warden, Donald W. Wyatt Detention Facility*; TODD LYONS, *Acting Director, Boston Field Office, U.S. Immigration and Customs Enforcement*; CHAD F. WOLD, *Acting Secretary, Department of Homeland Security*; MATTHEW T. ALBENCE, *Deputy Director and Senior Official Performing the Duties of Director, U.S. Immigration and Customs Enforcement*; WILLIAM BARR, *Attorney General of the United States*,<br>    Respondents. | C.A. No. 20-167-JJM-LDA |

ORDER

Shahdan Sallaj is being held in civil immigration detention by the Respondents at the Donald W. Wyatt Detention Facility (the "Wyatt"). He files an amended petition for a writ of habeas corpus (ECF No. 13) and temporary restraining order ("TRO") (ECF No. 4) seeking his immediate release due to health concerns created by the COVID-19 pandemic.[1]

---

[1] The Court heard Mr. Sallaj on his original petition for writ of habeas corpus (ECF No. 1) and motion for temporary restraining order on April 13, 2020. The Court delayed ruling on the merits pending the determination of his April 16, 2020 bail hearing.

For the reasons stated below, the Court GRANTS MR. Sallaj's Motion for Temporary Restraining Order. ECF No. 4.

BACKGROUND & FACTS

Mr. Sallaj is forty years old and a native of Kosovo. ECF No. 13 at 8. He arrived in the United States in March 2008, and, after marrying his wife, a U.S. citizen, he became a conditional legal resident. *Id.* In 2011, the conditions on Mr. Sallaj's legal residence were removed and he became an unconditional legal resident. Mr. Sallaj and his wife have a two-and-a-half-year-old son. *Id.*

On March 17, 2020, Mr. Sallaj was detained by the U.S. Department of Homeland Security's Bureau of U.S. Immigration and Customs Enforcement ("ICE") in Connecticut and transferred to the Wyatt. *Id.* The impetus for Mr. Sallaj's detention was his January 2019 conviction for misdemeanor reckless endangerment in the first degree under Conn. Gen. Stat. § 53a-63(a). *Id.* ICE claims this conviction is grounds for Mr. Sallaj's removal. *Id.* at 8-9. For this conviction, Mr. Sallaj was sentenced to a one-year suspended sentence. *Id.* at 9. He has served no time in criminal custody. *Id.*

On April 16, 2020, Mr. Sallaj had a bail hearing before an Immigration Judge. At this hearing, Mr. Sallaj's argued that he was not subject to mandatory detention under 8 U.S.C. § 1226(c) because he was not convicted of a crime involving moral

turpitude. *Id.* at 10. The Immigration Judge rejected that argument. *Id.* Mr. Sallaj's next hearing for his removal proceeding is currently scheduled for May 14, 2020.[2] *Id.*

*Covid-19 Pandemic*

COVID-19 is highly contagious with a mortality rate greater than influenza. People infected with the coronavirus can be asymptomatic during the two to fourteen-day COVID-19 incubation period and can unknowingly spread the virus. There is currently no treatment, vaccine, or cure for COVID-19. And while older people with pre-existing conditions are the most vulnerable, young people without preexisting conditions have become severely ill because of Covid-19, which, in some cases, has led to death.

The United States Centers for Disease Control and Prevention (the "CDC") warns that the coronavirus is spread mainly through person-to-person contact, particularly between those who are in close contact (within about six feet) with each other. CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, at 3-4 (Mar. 23, 2020) ("CDC Interim Guidance"), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf. A person may be infected due

---

[2] Mr. Sallaj amended his habeas petition to add a second claim challenging the Immigration Court's decision that his conviction for reckless endangerment qualifies as a crime involving moral turpitude, subjecting him to mandatory detention under 8 U.S.C. § 1226(c). ECF No. 13 at 12. The Respondents assert that the Court lacks jurisdiction to hear this claim due to the jurisdiction limiting provisions of the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq. ("INA"). ECF No. 15 at 2-6. Because the Court finds that Mr. Sallaj is entitled to a temporary restraining order providing for his release because of alleged violations of his Fifth Amendment right to substantive due process, the Court need not consider this claim at this time.

to respiratory droplets produced when an infected person coughs or sneezes that can land in the mouth or nose of another or can be inhaled. Additionally, people can be infected by touching an infected surface.

In response to the spread of COVID-19, the State of Rhode Island declared a state of emergency on March 9, 2020. ECF No. 15-2. Two days later, the World Health Organization declared COVID-19 to be a global pandemic. And President Donald J. Trump declared a national emergency on March 13, 2020.

With no vaccine or treatment, government officials are implementing restrictions to promote "social distancing," including forcing the shutdown of non-essential businesses and prohibiting social gatherings of over five people.

Because it is highly contagious with a relatively high mortality rate, the spread of Covid-19 in a closed facility, such as an immigration detention center, would be devastating. *See generally* CDC Interim Guidance. The Wyatt has attempted to prevent Covid-19 from spreading through measures designed to comply with the CDC's interim guidance for correctional facilities, including by implementing a two-step quarantine process where new detainees are quarantined for five days in single-person cells, then allowed to congregate with other new detainees for the next nine days. ECF No. 15-1 at 2-4. After fourteen days, the new detainees are "again medically screened for Covid-19 related symptoms" and if medically cleared, they are assigned to general population. *Id.* at 4. On April 21, 2020, the Wyatt reported the first positive COVID-19 test result of a detainee in its custody. ECF No. 3 in 20-mc-0004. As of today, six positive cases of Covid-19 have been confirmed at the Wyatt.

4

ANALYSIS

In his petition and TRO request, Mr. Sallaj argues that being held as a civil detainee in Wyatt for thirty days has put him at a greater risk of contracting Covid-19 and, as a result, violates his Fifth Amendment right to substantive due process. *See* ECF Nos. 4, 13. The Respondents counter that this claim fails because Mr. Sallaj's detention has been of insufficient duration to trigger constitutional concerns and his generalized Covid-19 fears do not state a constitutional claim. ECF No. 15 at 7-10.

First, as a preliminary matter, the Court has jurisdiction to hear Mr. Sallaj's Fifth Amendment claim because, although the INA limits the jurisdiction of district courts in removal proceedings, a district court may review a question that is independent of removal or "cannot effectively be handled through the available administrative process," including a constitutional challenge. *Aguilar v. U.S. ICE*, 510 F.3d 1, 11 (1st Cir. 2007).

*Temporary Restraining Order*

The four-factor legal standard for a temporary restraining order is the same as a preliminary injunction. *Harris v. Wall*, 217 F. Supp. 3d 541, 552–53 (D.R.I. 2016). The moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or lack of friction) between the injunction and the public interest. *Id.* "The four factors are not weighted equally; 'likelihood of

success is the main bearing wall of this framework' and of primary importance." *Id.* (citing *W Holding Co. v. AIG Ins. Co.–Puerto Rico*, 748 F.3d 377, 383 (1st Cir. 2014)).

*Likelihood of Success*

The Court finds that Mr. Sallaj has established a substantial likelihood of success on the merits of his alleged violation of the Fifth Amendment's Due Process Clause.

"When the Government detains a person for the violation of an immigration law, the person is a civil detainee, even if he has a prior criminal conviction." *Castillo v. Barr*, No. CV20-00605TJHAFMX, 2020 WL 1502864, at *3 (C.D. Cal. Mar. 27, 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Thus, as a civil detainee, Mr. Sallaj is "entitled to more considerate treatment than a criminal detainee, whose conditions of confinement are designed to punish." *See id.* (citing *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982)). That is because, under the Fifth Amendment's Due Process Clause, a civil detainee cannot be subjected to conditions that amount to punishment. *See Zadvydas*, 533 U.S. at 690.

The Constitution imposes upon the Government a duty to assume responsibility for a detainee's safety and general well-being while in custody. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993). For criminal defendants, the Eighth Amendment requires the Government to provide criminal detainees with basic human needs, including reasonable safety. *Id.* The Government violates the Eighth Amendment if it confines a criminal detainee in unsafe conditions and the Government may not "ignore a condition of confinement that is sure or very likely to

6

cause serious illness." *Id.* For pretrial detainees, "[t]he due process guarantee of the Constitution obliges the government 'to refrain at least from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health.'" *Savino v. Souza*, No. CV 20-10617-WGY, 2020 WL 1703844, at *6 (D. Mass. Apr. 8, 2020) (citing *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011)). Courts generally apply this same standard for civil immigration detainees as pretrial detainees. *Id.* Accordingly, civil immigration detainees can establish a due process violation by showing that a government official "'knew, or should have known' of a condition that 'posed an excessive risk to health,' and failed to take appropriate action." *Basank v. Decker*, No. 20 CIV. 2518 (AT), 2020 WL 1481503, at *5 (S.D.N.Y. Mar. 26, 2020) (citing *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)).

The risk of contracting COVID-19 in a detention center, such as the Wyatt, is dangerously high. As warned by the CDC, conditions of confinement inherently prevent one's ability to socially distance, which, until a treatment is discovered, or a vaccine developed, is the best measure to reduce the spread of the disease. CDC Interim Guidance at 4. Courts around the country are recognizing this fact. *See, e.g.*, *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1812850, at *4 (N.D. Cal. Apr. 9, 2020); *Basank*, 2020 WL 1481503, at *3 ("[t]he nature of detention facilities makes exposure and spread of the virus particularly harmful."); *Castillo*, 2020 WL 1502864, at *5 ("[T]he Government cannot deny the fact that the risk of infection in immigration detention facilities – and jails – is particularly high if an asymptomatic guard, or other employee, enters a facility."); *Coreas v. Bounds*, TDC-20-0780, 2020

7

WL 1663133, at *6 (D. Md. Apr. 3, 2020) (finding it implausible that "someone will be safer from a contagious disease while confined in close quarters with dozens of other detainees and staff than while at liberty"). Although the Respondents have asserted that the Wyatt has taken measures to mitigate the risk of Covid-19 spreading, its ability to do so is diminishing. There are now six confirmed positive cases at the Wyatt. But the full extent of the risk is unknown because, as of today, only sixty-eight detainees have been tested out of the five hundred eighty-one being held at Wyatt. Under these circumstances, the Court finds that Mr. Sallaj has met his burden of showing a likelihood of success on the merits of his Fifth Amendment claim because continuing to hold him in civil detention at the Wyatt, where COVID-19 is present, could expose him to an unnecessary substantial risk of serious harm to his health.

*Irreparable Injury*

Relatedly, the Court also finds that Mr. Sallaj has established that irreparable injury is likely to occur in the absence of such relief due to the concerns that his continued confinement will increase his likelihood of being exposed to Covid-19.

*Balance of Equities and Public Interest*

The balance of equities weighed in favor of releasing Mr. Sallaj because of his risk of irreparable injury and because the potential harm to the Respondents is limited. When you balance the risk of releasing Mr. Sallaj–a civil detainee, who was convicted of a misdemeanor, who is in this country with proper documents, and has an American citizen wife and child, against the substantial risks, evident and

unknown, at the Wyatt–the equities and public interest fall on the side of release. The Court is imposing certain conditions on Mr. Sallaj released as the Respondents request. Additionally, the risk that Mr. Sallaj will flee, given the current global pandemic and the fact that Mr. Sallaj's wife and son are still in Connecticut, is low.

Finally, it is without question that granting the TRO is in the public's interest as it is intended to reduce the spread of Covid-19 within the Wyatt. A spread of Covid-19 in this detention facility would be disastrous for the health and safety of those living and working there, as well as the burden it would cause on valuable medical resources.

CONCLUSION

For the reasons stated, the Petitioner's Motion for a Temporary Restraining Order is GRANTED. ECF No. 4. The Respondents shall, forthwith and without delay, release Mr. Sallaj from custody pending further order of this Court. The Respondents shall show cause, if they have any, as to why the Court should not issue a preliminary injunction in this case by May 1, 2020.

As part of his release, Mr. Sallaj must comply with the following conditions:

1. Mr. Sallaj will remain self-quarantined for a period of fourteen days from his release at the location to which he is released. He may leave that location during the fourteen-day period solely to obtain necessary medical treatment.

2. Mr. Sallaj will not alter the location to which he is released without prior approval of the Court.

3. Mr. Sallaj must comply with all federal, state, and local directives related to COVID-19.

4. Mr. Sallaj will refrain from any illegal activity while released.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.
John J. McConnell, Jr.
Chief United States District Judge

April 24, 2020